BRIAN F. CURLEY, ESQ. (9103)
10 Madison Avenue, 3rd Floor
P.O. Box 1314
Morristown, New Jersey 07963-1314
(973) 538-0700
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEERA SHIN, Ph.D., | Hon. |
| Plaintiff, | Civil Action No. |
| vs. | **COMPLAINT AND** |
| KEAN UNIVERSITY, | **JURY TRIAL DEMAND** |
| Defendant | |

Plaintiff, Meera Shin, Ph.D. ("Dr. Shin"), for her Complaint seeking relief from the employment discrimination of Defendant Kean University ("Kean"), states as follows:

**STATEMENT OF CLAIM**

1.     Kean is a public metropolitan university that purports to be dedicated to the intellectual, cultural, and personal growth and education of undergraduate and graduate students in an ethnically and culturally diverse environment.  In particular, Kean holds itself out as dedicated to an educational environment in which diversity flourishes and mutual respect characterizes relations in a pluralistic community.  Kean further purports to dedicate itself to student learning and academic rigor through a focus on teaching excellence, commitment to research, scholarship, and creativity.

2.     Notwithstanding the objectives it holds out to the public for appearance and marketing, Kean discriminated against the Plaintiff on the basis of her race, national origin, and other racial and cultural attributes.

3.      Although Plaintiff demonstrated her ability to provide excellence in teaching, commitment to research and publication, scholarship, creativity, as well as service to the University and community, Kean nonetheless refused to reappoint Plaintiff as an Assistant Professor, for reasons that are inconsistent with the true facts.

4.      Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on November 2, 2003.  (See EEOC Intake, Exhibit C hereto).

5.      The Equal Employment Opportunity Commission ("EEOC") investigated Plaintiff's claims and determined that Plaintiff's rights had been violated.  As stated by the EEOC, "…the evidence shows that [Plaintiff] was treated disparately during the evaluation process…The Commission concludes that [Plaintiff's] race was a factor considered by [Kean] when it decided not to reappoint her to the faculty…Based on this analysis…the evidence obtained during the investigation establishes a violation of Title VII of the Civil Rights Act of 1964."  (See EEOC Findings, Exhibit B hereto).

6.      The United States Department of Justice subsequently determined that it would not directly proceed to prosecute claims on behalf of the Plaintiff against Kean and issued a Notice of Right to Sue to Plaintiff on January 24, 2005.  (See Right to Sue Letter, Exhibit A hereto).

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction to hear and adjudicate the claims stated herein under 28 U.S.C. § 1331, 1343, 2201, 2202, and 42 U.S.C. § 2000e-5(f), this action being brought under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991, Pub. L. 102- 166, 105 Stat. 1071 (Nov. 21, 1991), the New Jersey Law Against Discrimination, and the common law of

the United States and the State of New Jersey, to redress and enjoin the discriminatory employment practices of Kean, as well as Kean's violations of applicable Federal and State common law.

8.      Venue is proper in this District by reason of 28 U.S.C. § 1391(b).

## THE PARTIES

9.      Plaintiff is of Korean descent and origin and a resident of New Jersey.  Plaintiff timely filed Title VII charges of discrimination with the EEOC on November 2, 2003.  (See EEOC Intake, Exhibit C hereto).  Plaintiff resides at 5 Springholm Drive, Berkeley Heights, County of Union, New Jersey.

10.     Kean is a public university of the State of New Jersey, with a principal address c/o Dr. Dawood Farahi, President, 1000 Morris Avenue, Union, County of Union, New Jersey.

## FACTS COMMON TO ALL COUNTS

11.     Plaintiff was first hired by Kean to commence duties as a tenure track assistant professor for the period September 1, 2001 through June 30, 2003, by way of an annually renewable personal services contract between Plaintiff and Kean.

12.     After comprehensive review of Plaintiff's qualifications, teaching effectiveness, scholarship, contributions to the University and community, fulfillment of professional responsibilities, observations by other faculty of classroom teaching, student evaluations and professional growth, Kean reappointed Plaintiff to her tenure track position for the period September 1, 2002 through June 30, 2003.

13.     After the same evaluation process described above, Plaintiff was again reappointed to her tenure track position for the period September 1, 2003 through June 30, 2004.

14.     Over the period of her employment with Kean from September 1, 2001 through June 30, 2004, Plaintiff was published or presented at least seven times on matters in her area of expertise.

15.     Plaintiff was at or near the top of the list for publications or presentations relative to other tenure track assistant professors generally, as well as compared to other tenure track assistant professors in her department.

16.     Over the period of her employment with Kean from September 1, 2001 through June 30, 2004, Plaintiff participated in several community and professional organizations in a manner and quantity that matched or exceeded that of other tenure track assistant professors generally, as well as compared to other tenure track assistant professors in her department.

17.     Over the period of her employment with Kean from September 1, 2001 through June 30, 2004, Plaintiff at all times fulfilled her professional responsibilities.

18.     Over the period of her employment with Kean from September 1, 2001 through June 30, 2004, Plaintiff was observed by other faculty members and rated by her students to be an effective teacher on par or better than other tenure track assistant professors generally, as well as compared to other tenure track assistant professors in her department.

19.     By way of a letter dated November 7, 2003, Plaintiff was advised that she would not be recommended for reappointment due to "weakness in the areas of Teaching and Service."

20.     Prior to receiving the letter dated November 7, 2003, and at all times relevant thereto, Plaintiff met or exceeded the expectations and requirements to maintain her tenure track position.

21.    At no time prior to November 7, 2003 was Plaintiff ever advised that she was not meeting expectations or requirements, nor otherwise advised that she needed to improve in any areas significant to maintaining her tenure track position.

22.    The faculty observations utilized to evaluate Plaintiff's teaching effectiveness showed no negative comments or any statements showing that the Plaintiff needed improvement in her teaching effectiveness.  (See EEOC Findings, Exhibit B hereto, ¶ 1).

23.    In fact, commentary on the faculty observations were positive and indicated that Plaintiff was "making effective use of technology," "provided a good deal of resources through the supporting Website to facilitate even greater learning," "had well prepared materials and made good use of technology throughout the lesson," and "the research and critical analysis required of this activity gives students practice at the skills necessary for the comprehensive exam experience and the thesis project.," which are comments inconsistent with Kean's contention that Plaintiff's teaching was ineffective and demonstrates that the basis proffered by Kean's not to reappoint Plaintiff was pretextual.  (See EEOC Findings, Exhibit B hereto, ¶ 1).

24.    Kean further alleged that Plaintiff's community service was "poor" as a basis for the refusal to reappoint Plaintiff, however, the evaluation was not consistent with evaluations from prior years where Plaintiff actually participated in fewer activities but was nonetheless reappointed to her position.  (See EEOC Findings, Exhibit B hereto, ¶ 2).

25.    Plaintiff was treated in a disparate manner during her evaluation as compared to the evaluation of another Caucasian assistant professor in the same Department.

26.    Kean failed to include in Plaintiff's evaluation package the facts that the majority of Plaintiff's student evaluations were positive and favorable.

27.     Based upon the objective evidence, the reasons offered by Kean for refusing to reappointment Plaintiff were clearly pretextual and designed to hide the fact that Plaintiff's race and national origin were the true reasons for Kean's refusal to reappoint Plaintiff.

28.     Kean's assertions that Plaintiff was not to be reappointed due to her failure to meet the requirements of her position were knowingly and maliciously false.

29.     As a result of the refusal of Kean to reappoint Plaintiff, and the allegations by Kean that Plaintiff was unable to meet the requirements of a tenure track assistant professor, Plaintiff has been unable to secure a similar tenure track position.

## FIRST COUNT
### (Violation of The Civil Rights Act of 1866 – 42 U.S.C. § 1981)

30.     Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine as though fully set forth herein.

31.     Plaintiff is an individual protected from discrimination on the basis of her race or national origin because of her race (Asian) and national origin (Korean).

32.     Kean discriminated against the Plaintiff by denying her the rights and benefits enjoyed by other white employees and applicants with respect to the terms and conditions of employment and full enjoyment of all the rights, benefits, privileges terms and conditions of employment, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et. seq.*.

33.     Kean's actions and omissions constituting the discriminatory conduct were intentional, deliberate, willful, and malicious, and done in callous disregard of the Plaintiff's rights.

34.     By reason of Kean's discriminatory conduct, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 1981.

6

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

      a.  Reinstatement of her position to a full tenured professor;
      b.  Compensatory damages;
      c.  Exemplary or punitive damages;
      d.  Attorney's fees;
      e.  Interest;
      f.  Costs of suit.

## SECOND COUNT

### *(Disparate Treatment In Violation of The Civil Rights Act of 1964 – 42 U.S.C. § 2000e)*

35.    Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine and the First Count as though fully set forth herein.

36.    Plaintiff is an individual protected from discrimination on the basis of her race or national origin because of her race (Asian) and national origin (Korean).

37.    There is no justification or business necessity by which Kean can justify its use of race or national origin as a basis for any decision to hire, fire, deny employment, or deny to continue employment of any individual including the Plaintiff.

38.    Kean's actions in using Plaintiff's race and origin as a basis not to retain Plaintiff's services by reappointment to her tenure track position as an assistant professor violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* and as amended by the Civil Rights Act of 1991.

39.    As a consequence of Kean's intentional and discriminatory actions, Plaintiff has been denied employment, resulting in the loss of past and future wages and other job benefits.

40.    Kean's actions and omissions constituting the discriminatory conduct were intentional, deliberate, willful, and malicious, and done in callous disregard of the Plaintiff's rights.

41.     By reason of Kean's discriminatory conduct, Plaintiff is entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* and as amended by the Civil Rights Act of 1991.

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

      a.  Reinstatement of her position to a full tenured professor;
      b.  Compensatory damages;
      c.  Exemplary or punitive damages;
      d.  Attorney's fees;
      e.  Interest;
      f.  Costs of suit.

## THIRD COUNT
### *(Violation of the New Jersey Law Against Discrimination N.J.S.A. 10:5-1, et. seq.)*

42.     Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine and the First and Second Counts as though fully set forth herein.

43.     Kean's actions and omissions constituted unlawful discrimination and/or an unlawful employment practice against the Plaintiff.

44.     Kean refused to reappoint Plaintiff to her tenure track position despite the fact that similar or less qualified persons were reappointed and effectively terminated Plaintiff's services on the basis of Plaintiff's race and national origin.

45.     Kean's actions and omissions constituting the discriminatory conduct were intentional, deliberate, willful, and malicious, and done in callous disregard of the Plaintiff's right.

46.     The upper management of Kean actually participated in, or was willfully indifferent to, the discriminatory conduct, specifically and without limitation, Jose A. Quiles (Interim Provost), and Dr. Dawood Farahi, President of Kean.

47.     By reason of Kean's discriminatory conduct, Plaintiff is entitled to all legal and equitable remedies available under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et. seq.*

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

- a.  Reinstatement of her position to a full tenured professor;
- b.  Compensatory damages;
- c.  Exemplary or punitive damages;
- d.  Attorney's fees;
- e.  Interest;
- f.  Costs of suit.

## FOURTH COUNT
### *(Wrongful Termination in Violation of Stated Policy)*

48.     Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine and the First through Third Counts as though fully set forth herein.

49.     Kean held itself out to the public and its employees, including the Plaintiff, as promoting cultural and ethnic diversity in its faculty and staff.

50.     Plaintiff had a reasonable expectation under New Jersey law, that the stated policies and objectives of Kean in its marketing and public relations, as well as the open promises to the faculty, staff and employees of Kean, that it would apply its objectives to promote diversity in a fair, reasonable, and uniform manner.

51.     Kean's discriminatory actions and omissions directed toward the Plaintiff violated the pervasive and openly announced policy at Kean to promote diversity.

52.     By reason of Kean's discriminatory conduct in violation of Kean's own stated policies, Plaintiff is entitled to all legal and equitable remedies available under New Jersey Law.

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

      a.  Reinstatement of her position to a full tenured professor;
      b.  Compensatory damages;
      c.  Exemplary or punitive damages;
      d.  Attorney's fees;
      e.  Interest;
      f.  Costs of suit.

## FIFTH COUNT
### *(Breach of the Implied Obligation of Good Faith and Fair Dealing)*

53.    Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine and the First through Fourth Counts as though fully set forth herein.

54.    As an employer subject to New Jersey law, Kean had an obligation to deal in good faith and fairly with the Plaintiff in the reappointment of her tenure track position.

55.    Kean and the Plaintiff were engaged in a legally binding contractual relationship whereby Plaintiff provided personal services to Kean.

56.    Based on all the surrounding facts and circumstances, Plaintiff reasonably believed she could not be refused reappointment unless Kean established cause for refusing reappointment based on Plaintiff's failure to meet the requirements of her position as a tenure track assistant professor.

57.    The terms of the employment contract between Kean and the Plaintiff objectively established that Plaintiff could not be refused reappointment unless Kean established cause for refusing reappointment based on Plaintiff's failure to meet the requirements of her position as a tenure track assistant professor.

58.     Plaintiff has a reasonable belief that under principles of contract law that Kean would deal with her employment in a manner consistent with the implied obligations of good faith and fair dealing inherent in the employment contract between Kean and Plaintiff.

59.     Plaintiff at all times relevant hereto, met or exceeded the requirements of her position.

60.     Kean lacked any justifiable basis to refuse to reappoint Plaintiff for cause.

61.     By its actions and omissions, Kean breached its obligations to deal with Plaintiff in a manner consistent with good faith and fair dealing.

62.     By its actions and omissions, Kean breached its implied obligations under the express terms of the employment agreement.

63.     By reason of Kean's actions and omissions, Plaintiff is entitled to all legal and equitable remedies available under New Jersey Law.

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

    a.  Reinstatement of her position to a full tenured professor;
    b.  Compensatory damages;
    c.  Exemplary or punitive damages;
    d.  Attorney's fees;
    e.  Interest;
    f.  Costs of suit.

### SIXTH COUNT
### *(Slander Per Se)*

64.     Plaintiff repeats and re-alleges each of its allegations set forth in paragraphs one though twenty-nine and the First through Fifth Counts as though fully set forth herein.

65.     The allegations by Kean that Plaintiff was an ineffective teacher and did not fulfill her commitments to the community were statements of fact which Kean knew, or should have known, were objectively false.

66.     The allegations by Kean against the Plaintiff were intrinsically slanderous and defamatory since those allegations went to Plaintiff's professional character and reputation, and her ability to fulfill the duties of the position of a professor at an institution of higher learning.

67.     Kean's actions, by and through its management, employees and agents, to propagate the false allegations against the Plaintiff were done intentionally or with a reckless disregard for the truth.

68.     Upon information and belief, Kean's slanderous and defamatory allegations by Kean have been passed to other third parties, including other colleges and universities.

69.     As a result of the slanderous and defamatory allegations issued by Kean through its managers, faculty, employee and agents, other colleges and universities have been deterred from hiring the Plaintiff.

70.     By reason of Kean's slanderous and defamatory allegations, Plaintiff is entitled to all legal and equitable remedies available under New Jersey and Federal Law.

**WHEREFORE**, Plaintiff Meera Shin, Ph.D. demands judgment against Defendant as follows:

    a.  Compensatory damages;
    b.  Exemplary or punitive damages;
    c.  Attorney's fees;
    d.  Interest;
    e.  Costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Brian F. Curley, Esq.
Attorney for Plaintiff Meera Shin, Ph.D.

_____
Brian F. Curley, Esq.

Dated: April 21, 2005

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Brian F. Curley, Esq.
Attorney for Plaintiff Meera Shin, Ph.D.

_____
Brian F. Curley, Esq.

Dated: April 21, 2005

# EXHIBIT A



**U.S. Department of Justice**

Civil Rights Division

---

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp/emphome.html*

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

RAA:WBF:mdw
DJ 170-48-253

CERTIFIED MAIL
RETURN RECEIPT REQUESTED                    JAN 2 4 2005

Dr. Meera Shin
5 Springholm Drive
Berkeley Heights, NJ 07922

                    Re: Dr. Meera Shin v. Kean University,
                        EEOC No. 171-2004-00261

Dear Dr. Shin:

        It has been determined that the Department of Justice will not file suit
on the above-referenced charge of discrimination that was referred to us by
the Equal Employment Opportunity Commission (EEOC).  This should not be taken
to mean that the Department of Justice has made a judgment as to whether or
not your charge is meritorious.
        <u>You are hereby notified that conciliation in this matter was
unsuccessful by the EEOC.  You are further notified that you have the right to
institute a civil action under Title VII of the Civil Rights Act of 1964, as
amended</u>, 42 U.S.C. 2000e, <u>et</u> <u>seq</u>., against the above-named respondent.  If you
choose to commence a civil action, such <u>suit must be filed in the appropriate
court within 90 days of your receipt of this Notice</u>.
        Therefore, you should consult an attorney of your own choosing at your
earliest convenience. If you are unable to locate an attorney, you may wish to
contact the EEOC, or apply to the appropriate court, since that court may
appoint an attorney in appropriate circumstances under Section 706(f)(1) of
Title VII, 42 U.S.C. 2000e-5(f)(1).
        We are returning the files in this matter to EEOC's Philadelphia
District  Office.  If you or your attorney have any questions concerning this
matter or wish to inspect the investigative file, please feel free to address
your inquiry to: Marie M. Tomasso, District Director, EEOC, the Bourse
Building, Suite 400, 21 S. Fifth Avenue, Philadelphia, PA 19106-2515.

                            Sincerely,

                            R. Alexander Acosta
                            Assistant Attorney General
                            Civil Rights Division

                By:

                            William B. Fenton
                            Deputy Chief
                    Employment Litigation Section

cc: Rebecca Fields, Esq.
    Kean University

# EXHIBIT B

The record shows that on September 18, 2003, the Department Committee and the College Retention and Tenure Committee reviewed Charging Party's and another White Assistant Professor's applications for reappointment. After reviewing the Check Sheet for Retention and Tenure (Check Sheet), the Committees voted on whether Charging Party should be reappointed. The evidence shows that the Department Committee voted 8-1 and the College Retention and Tenure Committee voted 4-1 not to reappoint Charging Party. However, the Check Sheet is inconsistent with the supporting evidence. Respondent Check Sheet indicates that Charging Party's teaching effectiveness "Needs Improvement." It refers to the Comments on Faculty Observations and states that Charging Party "Needs Improvement." A review of the Faculty Observations of Charging Party's classes shows no negative comments or any statements showing that Charging Party needed improvement in her teaching effectiveness. One observation in which Charging Party made use of a course Website, stated that Charging Party "made effective use of technology." It also states that she "provided a good deal of resources through the supporting Website to facilitate even greater learning." Another observation of another class stated that Charging Party "had well prepared materials and made good use of technology throughout the lesson." Finally, in another class in which Charging Party had her students engaged in a presentation and debating activity, the observer stated that "[t]he research and critical analysis required of this activity gives students practice at the skills necessary for the comprehensive exam experience and the thesis project. These comments are inconsistent with Respondents contention that Charging Party's teaching was ineffective and demonstrate pretext.

In addition, the Fall 2003 Check Sheet states that Charging Party's College and Community Service was "Poor." However, this evaluation is inconsistent with Charging Party's previous year's College and Community Service. A review of Charging Party's Fall 2001 and Fall 2002 Checklists and her Retention Applications, show that Charging Party participated in fewer activities during these years and was rated "Good."

Furthermore, the evidence also shows that Charging Party was treated disparately during the evaluation process. A review of the reappointment documentation of another Assistant Professor (White) who works in the same Department at Charging Party and is at the same teaching level, shows that Respondent included two pages of positive comments from student evaluations for her classes in her reappointment documentation. The evidence shows that a majority of Charging Party's student evaluations were positive and favorable, yet the Respondent failed to include the positive comments in her reappointment package during the evaluation process.

The Commission concludes that Charging Party's race was a factor considered by the Respondent when it decided not to reappoint her to the faculty. There is insufficient evidence to show that sex was used in Respondent's decision to terminate the Charging Party's employment.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII).

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has begun. Please be advised that upon receipt of this finding, any

reasonable offer to resolve this matter will be considered. Kurt Jung, Federal Investigator, will prepare a demand for monetary loses. Again, the Commission is postured to consider any reasonable offer. If an offer has not been previously submitted, Respondent is requested to consider for acceptance, rejection, or proposing a counteroffer to the conciliation proposal which will be forthcoming on behalf of Charging Party. The confidentiality provisions of the statute(s) and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

Investigator Kurt Jung will contact the parties to initiate conciliation discussions. If there are any questions or concerns, you may contact him at (215) 440-2660.

On Behalf of the Commission,

__8/3/04__
DATE

Marie M. Tomasso
District Director

EXHIBIT C

**US Equal Employment Opportunity Commission - Newark Area Office**
**1 Newark Center, 21ˢᵗ Floor - Newark, New Jersey 07102-5233     973-645-6383**

## INTAKE QUESTIONNAIRE - GENERAL

**If because of a disability you need assistance in completing this form, please contact the office indicated above.**

NAME **Meera** **Shin**
    (First)   (Middle name or initial)   (Last)

TELEPHONE NO. 908) 771-9595 (home)
    201) 951-5623 (cell)
    ( Include area code)

SOCIAL SECURITY NO. 334 90 5940

DATE OF BIRTH 9/09/70

ADDRESS 5 Springholm Dr.

COUNTY Union

CITY Berkeley Heights

STATE NJ     ZIP CODE 07922

**Please provide the name of an individual at a different address who is in the local area and who would know how to reach you.**

NAME Ben SJ Kwak
    (First)   (Middle name or initial)   (Last)

RELATIONSHIP Husband

ADDRESS (office) Parker Plaza (SK USA)

TELEPHONE NO. 201) 613-8114 (work)
    201) 951-5740 (cell)
    (Include area code)

CITY 400 Kelby St. 17th Fl. STATE _ _ ZIP CODE
Fort Lee NJ 07024

### Organization your complaint is against:

Employer ✓ Union _____ Employment Agency _____ Other _____ (Specify)

NAME Kean University

TELEPHONE NO. 908) 737-KEAN (5326)

ADDRESS 1000 Morris Ave

CITY Union     STATE NJ     ZIP CODE 07083

TYPE OF BUSINESS Higher Education

**Number of employees who worked at the organization named above.  Please check one.**

A. 15 - 100 _____   B. 101 - 200 _____   C. 201 - 500 _____   D. 501+ ✓   N. Under 15 _____
U. Unknown _____

**PLEASE PROVIDE A COMPLETE RESPONSE TO THE FOLLOWING**

CLASS refers to a person's race, sex, age, national origin, religion or disability.

1.    What position did you hold or were seeking with the above named organization?

I am an assistant professor on a tenure track.

**General Intake Questionnaire**          **-2-**

1.    **DATE OF HARM** (last date any harm which you consider discriminatory
happened): Oct 3, 2003

2.    **TYPE OF HARM** (Explain what action was taken against you that you believe to be discriminatory and
the <u>date(s)</u> of the action, incident, harm, etc.)

June 18, 2003. The early childhood and Family Studies department
denied my retention, which means I am not coming back for the
fall, 2004.
Oct 3, 2003. The College of Education supported the department decision

If you believe the organization treated you this way because of one or more of the reasons listed below,
please check those reasons.  If you believe that you were treated this way for a reason other than what is
listed, explain what you believe to be the reason.

___Sex                                             ✓ National Origin (Mexican, Hispanic, East Indian, Other)
___Race (Black, White, Asian/Pacific         ___Age (40+)
        Islander, American Indian,                 ___Retaliation
        Alaskan Native)                            ✓ Other Status as a new mother
___Color
___Religion
___Disability

Identify yourself in terms of the basis or bases you checked, for example, "I am black" or "I am a
disabled person" or my religious belief is."

The early childhood and Family Studies department has 2 black, 8 white, and
one foreign faculty members. I am the one and only foreign faculty
member this department ever had. I am Korean and I have an 18
months old son. This department didn't have any faculty member w.
a baby in 20 years and the last person was a male faculty.

If you checked "retaliation," have you ever previously filed a charge with EEOC or another civil
rights agency or complained to your employer about discrimination? ( ) yes ( ) no

If yes, explain:

3.    Provide your reasons for your belief that the action taken against you was discriminatory for the
reason you checked in item 3 above.

) I talked to
r. Lenhoff after
hat. She told me.
Don't repeat the
same mistake
ou did not
make enough
ffort to fit in.
ou don't understand
he culture, e.g.
here the door is."

① I was not given opportunities to contribute more to the department
due to my "new mother" status. For example, Dr Lenhoff said. "I
would love to give you this job if you don't have a baby. but
and She gave the job to Dr. Hoffman, another junior faculty.

② After the department decided not not retain me I talked to Dr. Gonne
who I believed the only vote I had at the retention meeting. She
told me, "They were talking about your English and they couldn't
get passed it." They decided not to retain me after this kind of disc

**General Intake Questionnaire**        **-3-**

4.     What reason was given to you for the action taken against you or for the treatment you received that you are complaining about?

When I asked what the reasons are, the department chairperson, Dr. Searson told me, "Your teaching is not effective and the visibility issues." "Let's see how you do with the point system at the College meeting and so forth."

5.     Are the reasons for the action taken against you by the organization accurate?

       Yes_____       No __✓___

       Explain your answer:

Visibility is not one of the criteria of reappointment. Point system was Never mentioned as a reappointment process. I have a good & improved evaluation from students with having review

6.     Describe the organization's policy or usual practice that governs the actions being complained   letters about.

Peer observation from the department never mentioned any problem with my teaching and, in fact, complemented my effectiveness of teaching. I have letters from committees I am involved saying that I am valuable.

7.     I can file a grievance to the president. But the department chair who denied n retention is r a new executive assistant to the president.

Has anyone else been treated as you were under similar circumstances? Please list them and identify by CLASS (race, sex, age, etc.)

       **Name**                           **CLASS**

None (as far as I know)

8a.     What happened to him or her?_____

N/A

**General Intake Questionnaire**          -4-

8.    Name other people who have been treated differently or more favorably under similar circumstances. Please list them and identify their **CLASS** (race, sex, age, etc.)

   **Name**                                **CLASS**

   Dr. Jo Hoffman          white, mid-forties, female

   We started at the same year, which is the Fall, 2001 semester.

9a.    What happened to him or her? She was appointed to "visible" services to the department and I was not. She is reappointed and I am not. She will be tenured and I will not. I repeatedly asked for more services to the department since the chair ~~and the chair told me~~ in Sep, 200 told me that visibility may be an issue and the department kept giving the jobs to her

9.    Where the organization gave a reason for any action taken against you, can you name any employee who did the same thing or something worse who was not treated the same as you?

   Name_____ Class (race, sex, age, etc.)_____

   Job/Dept. _____

   What happened to him/her _____
   When I expressed my concern about my reappointment last Spring, Lore Ullich, who retired last summer, told me, "I've been a secretary in this department for 30 years. Once they came, they stayed, except one. Dr. Strickland. She went to Rutgers." I am going to be the first one who is not tenured in this department in 30 years. What did I do so bad?

**Have you sought assistance in this matter from any Government agency, union, attorney, or any other source?**

   ___No ✓ Yes Kean Federation of Teachers      Sep. 26, 2003
               (Name of source of assistance)              (Date)

   We filed a 14-day letter to the President, which he chose not to respon
**RESULTS, IF ANY**
   Attorneys would not take University cases

Have you filed an EEOC Charge in the past? ✓ No _____Yes (if answer is yes, complete below)

_____   _____   _____
Approximate Date Filed   Organization Charged   EEOC Charge No. (if known)

I received unanimous votes for the first and second year review. This year, the vote was 8 to 1. What did I do to make the vote change so drastically. The Dean and the chair and the President said my scholarsh was exemplary, my teaching is good and improved, and my service is increased and valuable for year 2002-2003. The only changes are the

**General Intake Questionnaire**                    **-5-**

## SETTLEMENT INFORMATION

If a charge is filed, the Commission will attempt to settle your case.  What remedy would you be willing to accept?

① equity (reappointment and better ways to review other years until I get tenured since the department and College's review will be biased

② Payment of money to cover loss

③ Payment of money for my pain and suffering

What is/was your most recent wage/salary with this employer? $40000 for 10 months

| SIGNATURE | | DATE |
|---|---|---|
| | | 11/2/03 |

**PLEASE DO NOT ALTER OR SUBSTITUTE THIS QUESTIONNAIRE IN ANY WAY**

### SETTLEMENT INFORMATION

If a charge is filed, the Commission will attempt to settle your case.  Failure
to provide the requested information may result in the dismissal of your charge.

1.   What is/was your most recent salary with this employer? $47000 for 10 months

2.   If this is a promotion/hiring issue, what is the salary of the position(s)
sought? $47000 for 10 months

3.   Are you collecting unemployment benefits?____Yes__✓__No.  If not, please
explain.
I am employed

4.   Did you receive a severance package?____Yes__✓__No.  If yes, explain the
benefits that you received.
I am employed

5.   Explain in detail what action you have taken to find employment.  Include
dates of all action taken
I am employed

6.  Are you currently employed? ✓ Yes___ No.  If yes provide the following:

    a.  Date of hire Aug 2001 And position title Assistant Professor, tenure track

    b.  Name and address pf employer_____

    Kean University

    1000 Morris Ave

    Union NJ 07083

    c.  Salary at hire $46000/ And at the present time $47000/
                      10 months                    10 months

7.  What is the remedy you would be willing to accept?_____

① equity (reappointment and another way to review for other years until I get tenured since the department & college's review will be biased)

② payment of money to cover loss

③ payment of money for my pain and suffering

8.  What is the minimum relief that you will accept?_____

number ① and ② above.

9.  **Has this employer offered to settle the alleged discrimination?**

_____Yes __✓__No.  If yes, please provide the information:

a.  Date offer was made_____*N/A*_____

b.  Name and title of the person making the offer_____

_____

___*N/A*_____

_____

c.  Detailed explanation of the offer that was made_____

*N/A*_____

_____

_____

_____

_____

_____

_____

_____

d.  Did you accept the settlement offer?____Yes____No.  If you rejected the settlement offer, please explain in detail.

*N/A*_____

_____

_____

_____

_____

_____

_____

_____

10.  To date, list all out of packet expenses and damages (include dollar amount) as a result of the alleged discriminatory treatment.  At some point during this investigation, you may be required to submit documents supporting your claim of damages.

Attorney consultation fees , transportation, phone calls. time used , emotional damage (pain & suffering)

_____
Signature

11/2/03
_____
Date